David S. Casey, Jr. (SBN 60768)
Gayle M. Blatt (SBN 122048)
P. Camille Guerra (SBN 326546)
Jennifer L. Connor (SBN 241480)
**CASEY GERRY SCHENK FRANCAVILLA**
**BLATT & PENFIELD LLP**
110 Laurel Street
San Diego, CA 92101
Tel: (619) 238-1811
Fax: (619) 544-9232
dcasey@cglaw.com
gmb@cglaw.com
camille@cglaw.com
jconnor@cglaw.com

Joshua B. Swigart (SBN 225557)
**SWIGART LAW GROUP, APC**
2221 Camino Del Rio S., Suite 308
San Diego, CA 92108
Tel: (866) 219-3343
Fax: (866) 219-8344
josh@swigartlawgroup.com

*Attorneys for Plaintiff MICHAEL WALSH,*
*individually and on behalf of all others similarly situated*

## UNITED STATES DISCTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MICHAEL WALSH, individually and on behalf of all others similarly situated, | Case No. 2:24-cv-10955 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | |
| PIH HEALTH, INC. | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

---

CLASS ACTION COMPLAINT

Plaintiff Michael Walsh ("Plaintiff"), on behalf of himself and all others similarly situated, brings this Class Action Complaint (the "Action") against Defendant PIH Health, Inc. ("PIH" or "Defendant"), and alleges the following upon information and belief, except as to allegations concerning Plaintiff himself and his actions, which are alleged upon personal knowledge:

## I.   **INTRODUCTION**

1.    Plaintiff seeks to hold Defendant responsible for the harm it has caused and will continue to cause Plaintiff and other similarly situated persons as a result of Defendant's inadequate data security policies and practices, which allowed unidentified third parties to gain unauthorized access and exfiltrate highly sensitive and personally identifiable information and personal health information stored on Defendant's servers. The personal and medical information that the hackers were able to access included Personally Identifiable Information ("PII"), *i.e.*, patient names, home addresses, phone numbers, places of employment, Social Security numbers, dates of birth, along with Protected Health Information ("PHI"), *i.e.*, medical expenses and amounts paid for medical episodes, confidential diagnoses, laboratory and other test results, patient photos and scans, treatment plans, private emails with patients and internal confidential discussions, and other clinical and/or health information (collectively, "Private Information").

2.    Based on statements published on the PIH Health.org website, PIH reported that on "December 1, 2024, PIH Health was the victim of a ransomware attack. This criminal act compromised our network"[1] (the "Data Breach"). The ransomware attack paralyzed the network systems of PIH Health affecting three hospitals: PIH Health Downey Hospital, PIH Health Good Samaritan Hospital, and PIH Health

---

[1] *See PIH Health Frequently Asked Questions*, *Cyber Incident Updates*, https://www.pihhealth.org/cyber-incident-updates/. (Updated 12/17/2024) (Last visited 12/19/2024).

CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955

Whittier Hospital, along with Urgent Care Centers, doctor's offices and [PIH] home health and hospice agency. Due to inadequate security, Defendant allowed the sensitive Private Information of seventeen million current and former patients to be accessed and exfiltrated, without Defendant ever detecting this activity. Indeed, Defendant did not have security policies or practices in place to detect or stop this Data Breach from occurring.

3.    Healthcare providers such as PIH, entrusted with sensitive personal information, are known to be prime targets for cyberattacks because of the information they collect and store, including financial information of patients, login credentials, insurance information, medical records and diagnoses, and other personal identifying information and protected health information of patients – all extremely valuable on underground markets – and are required to do everything possible to protect against cybersecurity incidents, such as the Data Breach.

4.    Moreover, this is not Defendant's first data breach incident. Defendant reported to the California Attorney General's Office (and others) that on October 02, 2019 it was discovered that certain PIH employee email accounts had been accessed without authorization between June 11, 2019 through June 18, 2019 as part of a phishing campaign.[2] As a result of PIH's review of that attack, PIH learned that personal information and protected health information belonging to 159,879 current and former patients was contained within the accessed email accounts.[3] Worse, Defendant did not notify affected patients until nearly seven (7) months after that data breach was first discovered.

5.    As a custodian of PII and PHI, and based on its prior experience with a cyberattack, PIH knew, or should have known, of the importance of safeguarding the

---

[2] *See* State of California Department of Justice, Attorney General, https://oag.ca.gov/ecrime/databreach/reports/sb24-185839. (Last visited 12/19/2024).

[3] *Id.*

CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955

PII and PHI entrusted to it by Plaintiff and Class Members, and of the foreseeable consequences of a breach of if its data security systems, including the significant costs imposed on Plaintiff and Class Members resulting from a breach.

6.    Defendant's website reported that the December 01, 2024, ransomware attack caused significant disruptions to operations: requiring patients to bring paper copies of physician orders, shutting down phone systems, and resulting in some surgeries being cancelled.[4] Reportedly, the Data Breach affected all three hospitals, PIH Health Downey Hospital, PIH Health Whittier Hospital, and PIH Health Good Samaritan Hospital.

7.    The Data Breach occurred because PIH failed to implement reasonable security procedures and practices, failed to provide its employees with appropriate cybersecurity training designed to prevent and respond to "ransomware" attacks, failed to take adequate steps to monitor for and detect unusual activity on its servers, and failed to disclose material facts surrounding its deficient data security protocols.

8.    In addition to violating its specific representations to consumers, Defendant's actions constitute a clear failure to take and implement adequate and reasonable measures to ensure that Plaintiff's and Class Members' PII and PHI were safeguarded, failing to take available steps to prevent unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of data, including for internal use. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe and are entitled to injunctive and other equitable relief.

---

[4] *See PIH Health Frequently Asked Questions, Cyber Incident Updates*, https://www.pihhealth.org/cyber-incident-updates/. (Updated 12/17/2024) (Last visited 12/19/2024).

CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955

## II.    PARTIES

9.    Plaintiff Michael Walsh is a citizen of California, residing in the City of Whittier, and was a healthcare patient of PIH and his PII and PHI were stored on Defendant's systems at all time material hereto.

10.    Plaintiff is informed and believes and based thereon alleges that Defendant PIH Health, Inc. is a California corporation with its principal place of business located at 12401 Washington Blvd., Whittier, California 90602.

## III.    JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action in which the matter in controversy exceeds the sum of $5,000,000, there are more than 100 proposed Class Members, and minimal diversity exists as Defendant is a citizen of states different from that of at least one Class Member. The Court also has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims that necessarily raise substantial disputed federal issues under the Federal Trade Commission Act (15 U.S.C. § 45). *See, e.g. infra* at ¶¶ 50-56. This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

12.    This Court has personal jurisdiction over Defendant because, at all times relevant, Defendant was a California corporation, registered to do business in California with the California Secretary of State, and with its principal place of business located within California. Further, Defendant operates in this District and intentionally avails itself of markets within this District to render the exercise of jurisdiction by this Court just and proper.

13.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because significant events giving rise to this case took place in this District, and because Defendant is authorized to conduct business in this District, has intentionally availed

CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955

itself of the laws and markets within this District, does substantial business in this District and is subject to personal jurisdiction in this District.

## IV. <u>STATEMENT OF FACTS</u>

### A. Defendant's Business

14.     PIH is a nonprofit, regional healthcare network in the State of California with three hospitals, over thirty outpatient medical offices, a multispecialty medical (physician) group, home healthcare services and hospice care, as well as heart, cancer, and emergency services. PIH is in the business of rendering healthcare services, medical care, and treatment for the Los Angeles and Orange Counties and greater San Gabriel Valley areas.

15.     In the ordinary course of receiving treatment and health care services from Defendant, patients are required to provide PIH with sensitive, personal and private information such as:

    • Name, address, phone number and email address;

    • Date of birth;

    • Demographic information;

    • Social Security number;

    • Information relating to individual medical history;

    • Insurance information and coverage;

    • Information concerning an individual's doctor, nurse or other medical providers;

    • Photo identification;

    • Employer information, and;

    • Other information that may be deemed necessary to provide care.

16.     PIH also gathers certain medical information about patients and creates records of the care it provides to them.

17.     Additionally, Defendant may receive PII and PHI from other individuals and/or organizations that are part of a patient's "circle of care," such as referring physicians, patient's other doctors, patient's health plan(s), close friends, and/or family members.

**B. Defendant's Representations About Security and Privacy**

19.     All of Defendant's employees, staff, entities, clinics, sites, and locations may share patient information with each other for various purposes without a written authorization, as disclosed in the PIH's Privacy Policy (the "Privacy Notice"). The current privacy notice is posted on Defendant's website at: https://www.pihhealth.org/policies-legal-notices/privacy-policy/

20.     Defendant's Privacy Notice reads: "We understand that medical information about you and your health is personal. We are committed to protecting medical information about you. We create a record of the care and services you receive. We need this record to provide you with quality care and to comply with certain legal requirements. This notice applies to all of the records of your care generated by the hospital or its entities, whether made by hospital/entity personnel or your personal doctor."[5]

21.     Defendant's Privacy Notice expressly states, among other things: A) that Defendant would protect "medical information about you;" B) "[m]ake sure that medical information that identifies you is kept private;" C) "[g]ive you notice of our legal duties and privacy practices with respect to medical information about you;" D) "[f]ollow the terms of the notice that is currently in effect;" E) to make any other uses and disclosures of medical information not covered by the Privacy Notice or the laws

---

[5] *See PIH Health Policies & Legal Notices,* https://www.pihhealth.org/policies-legal-notices/privacy-policy/, Last visited 12/19/2024).

- 6 -

that apply to use "only with written permission;" and F) to notify patients in the event of a breach of unsecured medical information.[6]

22.     The Privacy Notice is provided to every patient upon request and is posted on Defendant's website. Defendant also notes that it is required by law to make good faith efforts to obtain written acknowledgement of receipt of the Privacy Notice from patients, maintain records of signed receipts, and document the failure to obtain a receipt.

23.     Based on the foregoing, Defendant made promises and representations to Plaintiff and Class Members that their PII and PHI would be kept safe and their confidentiality of their information would be maintained. But it was not.

## C.     The Data Breach

24.     In an announcement posted to PIH's website on December 06, 2024 (the "Announcement"), PIH explains:

"Frequently Asked Questions

**What happened to the PIH Health phones and computer systems?**

On Sunday, December 01, 2024, PIH Health was the victim of a ransomware attack. This criminal act compromised our network.

*          *          *

**Has any personal information belonging to patients been compromised?**

We are currently working with the assistance of third-party cyber forensic specialists to identify the nature and scope of the issue. We do not have any further information on this at this time. If we do find that protected

---

[6] *Id.*

CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955

health information is compromised, those impacted will be notified immediately.[7]

25.    Defendant's Announcement failed to provide additional information, including the number of affected individuals or the specific type of information available. Instead, days later on December 17, 2024, Defendant simply reiterated that "PIH Health is working with cyber forensic specialists to assess the issue. Impacted individuals will be notified if protected health information is found to be compromised."[8]

26.    But the hackers responsible for the cyberattack already claimed and demonstrated with screenshots the compromised data and claiming that about 17 million patient records were compromised.[9]

27.    Specifically, the hackers said in a letter to PIH: "Be informed, there was a Ghost in your network! But don't get Spooked, ghost is friendly, and we can help you handle with [*sic*] it. There are two serious issues should be discussed in Chat: 1. Whole your network [*sic*] with all servers and hosts can be restored easily with our special Decryption Key, we will provide you the proofs of properly working decryption tool. 2. Our little spectrum analysis shows that your network is highly vulnerable, also the data on your file-servers was stored insecurely. So, the ghost has taken your data as

---

[7] *See PIH Health Frequently Asked Questions*, *Cyber Incident Updates*, https://www.pihhealth.org/cyber-incident-updates/ (Updated 12/17/2024) (Last visited 12/19/2024).

[8] *See PIH Health Frequently Asked Questions*, *Cyber Incident Updates*, https://www.pihhealth.org/cyber-incident-updates/, (Updated 12/17/2024) (Last visited 12/19/2024).

[9] *See Ransomware Letter Faxed to PIH Health*, https://www.instagram.com/whittierinformed/p/DDNucUVy1G8/ heres-a-copy-of-the-ransomware-fax-sent-to-pih-health-that-shut-down-their-hospi/?img_index=1, (Last visited 12/19/2024).

CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955

evidence, and if you're not going to cooperate and make a deal, then all your confidential files will be published on the Internet."[10] This threat is consistent with ransomware attacks whereby the hackers threaten to release stolen private information to even further cybercriminals, identity thieves, and/or the Dark Web if a costly ransom sum is not paid.[11]

28.    The hackers reported that purportedly about two terabytes of the following types of "highly sensitive information" and "personal and medical data including 'PHI'" were compromised:[12]

- Over 8.1 mil. medical episodes with full data like home address, phone number, place of work, amount payed for the current case;
- 7.8 mil of full patient's data (xlsx files contains SSN, DOB, phone numbers, home addresses, etc);
- 1.1 mil of other personal data;
- 100,000 confidential diagnosis and test results;
- Patient's photos, scans and etc.;
- Issued treatments for thousands of patients, including oncology;
- The list of the cancer patients which is around 5973 (counted per physician);
- Confidential information about the state of health;
- PIH Health's oncology profitability and monthly volumes;
- Private emails with the patients about the treatments and test results;
- Internal confidential discussions;
- Around 100 active NDAs between PIH Health and other medical organizations and other parties;

---

[10] *See Id. See also The HIPPA Journal*, *Hackers Claim to Have Stolen 17 Million Patient Records from PIH Health*, https://www.hipaajournal.com/pih-health-data-breach-ransomware/, (Last visited 12/19/2024).

[11] *See Ransomware Attack Disrupts Patient Care at California's PIH Health Centers*, https://www.halcyon.ai/attacks-news/ransomware-attack-disrupts-patient-care-at-californias-pih-health-centers, (Last visited 12/19/2024).

[12] *See The HIPPA Journal*, *Hackers Claim to Have Stolen 17 Million Patient Records from PIH Health*, https://www.hipaajournal.com/pih-health-data-breach-ransomware/, (Last visited 12/19/2024).

CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955

- Certain files selected including LACA's, CVMA's, BLUESIGHT's, Knowtion Healthes, Palomars's and others;
- Confidentiality agreements with employees; and
- Plus, financials, cash flows, claims, emails, and correspondence and a lot of others.[13]

29.     In its Cyber Incident Updates, Defendant does not disclose how many patients' information was breached, leaving individuals to speculate whether it is likely that their Private Information has been compromised and without any clear instruction on what they can do to protect themselves now that their PHI and/or PII has been exposed.[14]

30.     Personal identifying information is a valuable commodity for which a black market exists on the Dark Web, among other places. Personal data can be worth from $1,000-$1,200 on the Dark Web [15] [16] and the legitimate data brokerage industry is valued at more than $250 billion.

31.     Medical data is even more valuable because unlike other personal information, such as credit card numbers which can be quickly changed, medical data is static. This is why companies possessing medical information, like Defendant, are

---

[13] *See The Orange County Register*, *PIH Health Making Progress Resolving Massive Cyber Attack that Paralyzed 3 Hospitals*, https://www.ocregister.com/2024/12/18/pih-health-making-progress-resolving-massive-cyber-attack-that-paralyzed-3-hospitals/ (Last visited 12/19/2024).

[14] *See PIH Health Frequently Asked Questions*, *Cyber Incident Updates*, https://www.pihhealth.org/cyber-incident-updates/, (Updated 12/17/2024) (Last visited 12/19/2024).

[15] *See The sad truth about how much your Facebook data is worth on the dark web*, *Marketwatch*, (https://www.marketwatch.com/story/spooked-by-the-facebook-privacy-violations-this-is-how-much-your-personal-data-is-worth-on-the-dark-web-2018-03-20) (Last visited 12/18/2024).

[16] *See Revealed – how much is personal information worth on the dark web?*, *Insurance Business Magazine*, (Last visited 12/19/2024).

- 10 -

targeted by cyber-criminals.[17] Medical records are even worth more than a SSN, credit card, and driver's license combined, according to federal officials. They estimate that medical records can go for anywhere between $250 to $1,000.[18] Thus, Plaintiff and Class Members private information has a distinct, high value – which is why legitimate companies and criminals seek to obtain and sell it.

### D. Defendant Violated Its Obligations to Plaintiff and Class Members

32.    The Data Breach exposed Defendant's inadequate cybersecurity and privacy practices as woefully insufficient.

33.    Indeed, the fact that Defendant only publicly announced the Data Breach a couple of days after the hackers communicated their stolen Private Information as part of the ransom communications, suggests that Defendant only "learned" of the Data Breach after the fact, as part of the hackers' extortion efforts, and not through any security alerts or detectors on Defendant's systems.

34.    As a direct result of Defendant's failure to secure and safeguard the sensitive information of customers that entrusted them to do so, all of this sensitive PHI and/or PII is in the hands of cybercriminals.

35.    At all relevant times, Defendant had a duty to Plaintiff and Class Members to properly secure their PHI and PII, encrypt and maintain such information using industry standard methods, train its employees, utilize available technology to defend its systems from invasion, act reasonably to prevent foreseeable harm to Plaintiff and

---

[17] *See Your medical record is worth more to hackers than your credit card,* Reuters, September 24, 2014, https://www.reuters.com/article/technology/your-medical-record-is-worth-more-to-hackers-than-your-credit-card-idUSKCN0HJ21I/), (Last visited 12/18/2024).

[18] *See WPRI, RI hospitals fight cyberattacks on 'almost a daily basis,'* Oct. 10, 2023. (https://www.wpri.com/target-12/ri-hospitals-fight-cyberattacks-on-almost-a-daily-basis/), (Last visited 12/18/2024).

CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955

Class Members, and to promptly notify Plaintiff and Class Members when Defendant became aware that their PHI and PII may have been compromised.

36.    Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant, on the one hand, and Plaintiff and the Class Members, on the other hand. The special relationship arose because Plaintiff and Class Members relied on Defendant to secure their PHI and PII when they entrusted Defendant with the information required to obtain Defendant's services.

37.    Defendant had the resources necessary to prevent the Data Breach but neglected to adequately invest in adequate security measures, despite its obligation to protect customers' PHI and PII. Accordingly, Defendant breached its common law, statutory, and other duties owed to Plaintiff and Class Members.

38.    Defendant owed a non-delegable duty to Plaintiff and Class Members to implement and maintain reasonable and adequate security measures to secure, protect, and safeguard their PHI and PII against unauthorized access and disclosure.

39.    In fact, as detailed above, Defendant's failure to implement and maintain adequate security measures also violated Defendant's representations and promises to its current and prospective patients, on which Plaintiff and Class Members relied in choosing to their healthcare provider of services and pay Defendant for such services.

40.    As a result of the Data Breach, Plaintiff and Class Members suffered injury and ascertainable losses in the form of the present and imminent threat of fraud and identity theft, loss of  the benefit of their bargain, out-of-pocket expenses, loss of value of their time reasonably incurred to remedy or mitigate the effects of the attack, and the loss of, and diminution in, value of their PHI and PII.

41.    In addition, Plaintiff's and Class Members' sensitive Private Information, while compromised and taken by unauthorized third parties, also remains in the hackers' and Defendant's possession. Without additional safeguards and independent review and oversight, it remains vulnerable to future cyberattacks and theft and misuse.

CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955

42.     The Data Breach was a direct result of Defendant's failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect victims' Private Information.

43.     The mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class Members' Private Information was a known risk to Defendant and entities like it, and Defendant was thus on notice that failing to take steps necessary to secure the Private Information against those risks left that property in a dangerous condition and vulnerable to theft. Defendant was further on notice of the severe consequences that would result to Plaintiff and Class Members from its failure to safeguard their Private Information.

44.     Defendant failed to properly monitor the computer network and systems that stored the Private Information. Instead, had Defendant properly monitored its computer network and systems, it would have discovered the intrusion sooner and could have cut off access to the hacker(s) thereby mitigating the impact of the attack, as opposed to letting cyberthieves roam freely in Defendant's network for an unknown period of time.

45.     Plaintiff's and Class Members' identities are now at risk because of Defendant's negligent conduct since the Private Information that Defendant collected and maintained is now in the hands of data thieves. This present risk will continue for their respective lifetimes.

46.     Plaintiff and Class Members will incur out of pocket costs for undertaking protective measures to deter and detect identity theft.

47.     Plaintiff seeks to remedy these harms on behalf of himself and all similarly situated individuals whose Private Information was accessed during the Data Breach.

48.     Plaintiff seeks remedies including, but not limited to, actual damages, compensatory damages, nominal damages, and reimbursement of out-of-pocket costs.

CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955

Plaintiff also seeks injunctive and equitable relief to prevent future injury on behalf of himself and the Class.

### E.   Defendant Failed to Comply with FTC Guidelines

49.   The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

50.   In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses.  These guidelines provide that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[19]

51.   The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[20]

52.   The FTC further recommends that companies limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

---

[19] *See Protecting Personal Information: A Guide for Business, Federal Trade Commission* (2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf, (Last visited 12/17/2024).

[20] *Id.*

CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955

53.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

54.    Section 5 of the FTCA, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect     personal, Private Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

55.    Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' Private Information or to comply with applicable industry standards constitutes and unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

56.    Defendant was at all times fully aware of its obligation to protect the Private Information of its customers; Defendant was also aware of the significant repercussions that would result from its failure to do so. Accordingly, Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

**F.    Plaintiff Michael Walsh**

57.    Plaintiff provided his PHI and PII to Defendant as a condition of receiving medical and healthcare services from Defendant at its Whittier hospital.

58.    At the time of the Data Breach, Defendant retained Plaintiff's Private Information in its system.

- 15 -

59.     Plaintiff received texts and/or email notifications from Defendant leading to his good faith understanding that his information was affected by the Data Breach.

60.     Upon information and belief, Plaintiff's Private Information was compromised in the Data Breach and stolen by cybercriminals who illegally accessed Defendant's network for the specific purpose of targeting Private Information.

61.     Plaintiff and Class Members have been damaged by the compromise of their Private Information, including personal identifying information and personal health information, in the Data Breach.

62.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

63.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been forced to expend time dealing with the effects of the Data Breach.

64.     Plaintiff and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

65.     Plaintiff and Class Members face substantial risk of being targeted for future ransomware, phishing, data intrusion, and other illegal schemes based on their Private Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class Members.

66.     Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit reports fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955

67. Plaintiff and Class Members also suffered a loss of value of their Private Information when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

68. Plaintiff and Class Members were also damaged via benefit-of-the-bargain damages. Plaintiff and Class Members overpaid for a service that was intended to be accompanied by adequate data security but was not. Part of the price Plaintiff and Class Members paid to Defendant was to be used by Defendant to fund adequate security of Defendant PIH's computer property and Plaintiff's and Class Members' Private Information. Thus, Plaintiff and the Class Members did not get what they paid for.

69. Plaintiff and Class Members have spent and will continue to spend significant amounts of time monitoring their financial and medical accounts and records for misuse.

70. Plaintiff and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach, including ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

71. As a result of the Data Breach, Plaintiff and Class Members have also suffered emotional distress as a result of the release of their PHI and/or PII, which they believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using the PHI and/or PII for purposes of identity theft and fraud. Plaintiff is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data   Breach which was maliciously targeted at current and former health care patients.

72. As a result of the Data Breach, Plaintiff anticipates that he and Class Members will spend considerable time and money on an ongoing basis to try to mitigate and address harm caused by the Data Breach. In addition, Plaintiff and Class Members

CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955

will continue to be at present, imminent, and continued increased risk of identity theft and fraud for the remainder of their lives.

## V.   CLASS ALLEGATIONS

73.    Plaintiff brings this class action pursuant to Fed. Rules of Civ. Procedure, Rule 23(b)(2), 23(b)(3), and 23(c)(4), on behalf of himself and all others similarly situated, as a member of a proposed nationwide class defined as follows:

> **Nationwide Class:** All United States residents whose PHI and/or PII was compromised in the Data Breach that occurred on or around December 01, 2024 (collectively, "the Class" or "Class Members").

Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers, and directors and any entity in which Defendant has a controlling interest, all individuals who make a timely and valid election to be excluded from this proceeding, any and all federal, state or local governments, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

74.    Plaintiff also seeks to represent a California Subclass defined as follows:

> **California Subclass:** All residents of the State of California whose PHI and/or PII was compromised in the Data Breach that occurred on or around December 01, 2024 (collectively, "the California Subclass" or "California Subclass Members").

75.    In the alternative, Plaintiff requests additional classes and/or subclasses as necessary based on the types of PHI and/or PII that were compromised.

76.    This action has been brought and may be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class/Subclasses are ascertainable, as described further below.

77.    <u>Numerosity</u>: A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the Class are so numerous that joinder of all members is impractical, if not impossible. Plaintiff is informed and believes and, on that basis, alleges that the total number of Class Members is at

CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955

least in the hundreds of thousands of individuals. Membership in the Class will be determined by analysis of Defendant's records and/or through the records made publicly available by the bad actor(s).

78.    <u>Commonality</u>: Plaintiff and the Class Members share a community of interest in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

i.    Whether Defendant had a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, using, and/or safeguarding their Private Information;

ii.    Whether Defendant knew or should have known of the susceptibility of its data security systems to a data breach;

iii.    Whether Defendant's security procedures and practices to protect its systems were reasonable in light of the measures recommended by data security experts;

iv.    Whether Defendant's failure to implement adequate data security measures allowed the Data Breach to occur;

v.    Whether Defendant failed to comply with its own policies and applicable laws, regulations and industry standards relating to data security;

vi.    Whether Defendant adequately, promptly and accurately informed Plaintiff and Class Members that their Private Information had been compromised;

vii.    How and when Defendant actually learned of the Data Breach;

viii.    Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of the Private Information of Plaintiff and Class Members;

ix.    Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

x.    Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard Plaintiff's and Class Members' Private Information;

CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955

xi.     Whether Plaintiff and Class Members are entitled to actual and/or statutory damages and/or whether injunctive, corrective and/or declaratory relief and/or an accounting is/are appropriate as a result of Defendant's wrongful conduct;

xii.    Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct.

79.    <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class sustained damages arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein.

80.    <u>Adequacy of Representation</u>: Plaintiff in this class action is an adequate representative of the Class in that Plaintiff has the same interest in the litigation of this case as the Class Members, are committed to the vigorous prosecution of this case and has retained competent counsel who are experienced in conducting litigation of this nature. Plaintiff is not subject to any individual defenses unique from those conceivably applicable to other Class Members or the Class in their entirety. Plaintiff anticipates no management difficulties in this litigation.

81.    <u>Superiority of Class Action</u>: The damages suffered by individual Class Members are significant but may be small relative to each member's enormous expense of individual litigation. This makes or may make it impractical for members of the Class to seek redress individually for the wrongful conduct alleged herein. Even if Class Members could afford such individual litigation, the court system could not. Should separate actions be brought or be required to be brought by each individual member of the Class, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings which might be dispositive of the interests of other Class Members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests adequately. Individualized litigation increases the delay and expense to all parties and to the court system, presented by the case's complex legal

CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955

and factual issues. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale and comprehensive supervision by a single court.

82.     Class certification is proper because the questions raised by this Complaint are of common or general interest affecting numerous persons, so it is impracticable to bring all Class Members before the Court.

83.     This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate concerning the Class in its entirety. Defendant's policies and practices challenged herein apply to and affect Class Members uniformly. Plaintiff's challenge of these policies and practices hinges on Defendant's conduct concerning the Class in its entirety, not on facts or law applicable only to Plaintiff.

## CAUSES OF ACTION

## COUNT ONE

### (Negligence)

### (On Behalf of Plaintiff and the Nationwide Class)

84.     Each and every allegation of the preceding paragraph is incorporated in this Count with the same force and effect as though fully set forth herein.

85.     At all times herein relevant, Defendant owed Plaintiff and Class Members a duty of care, *inter alia*, to act with reasonable care to secure and safeguard their PHI and PII (again, collectively, "Private Information") and to use commercially reasonable methods to do so. Defendant took on this obligation upon accepting and storing Plaintiff's and Class Members' Private Information on its computer systems and networks.

CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955

86.    The duty Defendant owed Plaintiff and Class Members includes but is not limited to (a) the duty to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting the Private Information in its possession; (b) the duty to protect Plaintiff's and Class Members' Private Information using reasonable and adequate security procedures and systems that were/are compliant with industry-standard practices and/or its own representations; (c) the duty to implement processes to detect the Data Breach quickly and to act on warnings about data breaches timely; and (d) the duty to promptly notify Plaintiff and Class Members of any data breach, security incident or intrusion that affected or may have affected their Private Information.

87.    Defendant knew or should have known that the Private Information was private and confidential and should be protected as private and confidential and, thus, Defendant owed a duty of care to        not subject Plaintiff and Class Members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

88.    Defendant knew or should have known of the risks inherent in collecting and storing Private Information, the vulnerabilities of its data security systems and the importance of adequate security. Defendant knew or should have known about numerous well-publicized data breaches, including breaches dealing with genetic information of individuals.

89.    Defendant knew or should have known that its data systems and networks did not adequately safeguard Plaintiff's and Class Members' Private Information.

90.    Because Defendant knew that a breach of its systems could damage numerous individuals, including Plaintiff and Class Members, Defendant had a duty to adequately protect its data systems and the Private Information stored thereon.

CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955

91.   Only Defendant was in the position to ensure that its systems and protocols were sufficient to protect the Private Information that Plaintiff and Class Members had entrusted to it.

92.   Defendant breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard their Private Information. This breach of duty includes but is not limited to (a) failing to implement computer systems and data security practices to detect the intrusion and downloading of Private Information for millions of Defendant's customers; (b) failing to timely and accurately disclose that Plaintiff's and Class Members' Private Information had been improperly acquired or accessed; (c) failing to provide adequate supervision and oversight of the Private Information with which it was and is entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather Plaintiff's and Class Members' Private Information, misuse the Private Information and intentionally disclose it to others without consent; (d) failing to adequately train its employees with respect to security practices that would have prevented or mitigated the extent of the Data Breach; (e) failing to adequately enforce security policies aimed at protecting Plaintiff's and Class Members' Private Information; and (f) failing to implement processes to quickly detect data breaches, security incidents or intrusions such as the Data Breach in question.

93.   As a proximate and foreseeable result of Defendant's negligent conduct, Plaintiff and Class Members have suffered damages and are at imminent risk of additional harm and damages as alleged herein.

94.   Further, failing to provide timely and clear notification of the Data Breach to Plaintiff and Class Members, Defendant prevented Plaintiff and Class Members from taking meaningful, and proactive steps to secure their Private Information.

CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955

95.     There is a close causal connection between Defendant's failure to implement security measures to protect Plaintiff's and Class Members' Private Information and the harm or risk of harm suffered by Plaintiff and Class Members. Plaintiff's and Class Members' Private Information was accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

96.     Defendant's actions and failures to act e constitute negligence. .

97.     As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will continue to suffer injury, including but not limited to (a) damage to and diminution in the value of their Private Information, including personal identifying information and personal health information, a form of property that Defendant maintained belonging to Plaintiff and Class Members; (b) violation of their privacy rights; (c) the compromise, publication, and/or theft of their Private Information; (d) lost money paid to Defendant and the lost benefit of the bargain in Defendant's failure to comply with its obligations and representations, (e) the out-of-pocket costs for detecting, preventing, mitigating the effects of the Data Breach; and (f) the present, imminent and impending injury arising from the increased risk of identity theft and fraud.

98.     As a direct and legal result of Defendant's negligence, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including but not limited to anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

99.     Additionally, as a direct and legal result of Defendant's negligence, Plaintiff and Class Members have suffered and will continue to suffer the continued risks of exposure of their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake

- 24 -
CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955

appropriate and adequate measures to protect Private Information in its continued possession.

## COUNT TWO

### (Breach of Implied Contract)

### (On Behalf of Plaintiff and the Nationwide Class)

100. Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth herein.

101. Through their course of conduct, Defendant, Plaintiff, and Class Members entered into implied contracts for Defendant to implement data security adequate to safeguard and protect the privacy of Plaintiff's and Class Members' Private Information.

102. Defendant required Plaintiff and Class Members to provide and entrust their Private Information to it as a condition of obtaining Defendant's healthcare services.

103. Defendant solicited and invited Plaintiff and Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

104. As a part of the agreement, as discussed above, Defendant specifically agreed that it would provide security to detect and prevent data breaches and misuse of Plaintiff's and Class Members' Private Information, to safeguard and protect such non-public information, and to keep such information secure and confidential. Defendant also impliedly agreed to timely and accurately notify Plaintiff and Class Members if their data had been breached and compromised or stolen.

105. A meeting of the minds occurred when Plaintiff and Class Members agreed to, and did, provide their Private Information and money to Defendant, in exchange for, amongst other things, the protection of their Private Information.

CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955

106.   Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant.

107.   Defendant breached the implied contracts it made with Plaintiff and Class Members by failing to safeguard and protect their Private Information and by failing to provide timely and accurate notice to them that their Private Information was compromised because of the Data Breach.

108.   As a direct and legal result of Defendant's breach of contract, Plaintiff and Class Members have suffered and will continue to suffer injury, including but not limited to (a)       damage to and diminution in the value of their Private Information, a form of property that Defendant maintained belonging to Plaintiff and Class Members; (b) violation of their privacy rights; (c)  the compromise, publication, and/or theft of their Private Information; (d) lost money paid to Defendant and the lost benefit of the bargain in Defendant's failure to comply with its obligations and representations, (e) the out-of-pocket costs for detecting, preventing, mitigating the effects of the Data Breach; and (f) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

## COUNT THREE

### (Unjust Enrichment)

### (On Behalf of Plaintiff and the Nationwide Class)

109.   Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth herein.

110.   Plaintiff and Class Members conferred a monetary benefit on Defendant. Specifically, they purchased goods and services from Defendant and in so doing provided Defendant with their Private Information. In exchange, Plaintiff and Class Members should have received from Defendant the goods and services that were the subject of the transaction and have their Private Information protected with adequate data security.

CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955

111.   Defendant knew that Plaintiff and Class Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the Private Information of Plaintiff and Class Members for business purposes.

112.   The amounts Plaintiff and Class Members paid for goods and services were used, in part, to pay for use of Defendant's network and the administrative costs of data management and security.

113.   Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards and by Defendant's own representations to Plaintiff and Class Members.

114.   Defendant failed to secure Plaintiff's and Class Members' Private Information and, therefore, did not provide full compensation for the benefit Plaintiff and Class Members provided.

115.   Defendant acquired the Private Information through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

116.   If Plaintiff and Class Members knew that Defendant had not reasonably secured their Private Information, they would not have agreed to Defendant's services.

117.   Plaintiff and Class Members have no adequate remedy at law.

118.   As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will continue to suffer injury, including but not limited to (a)        damage to and diminution in the value of their Private Information, a form of property that Defendant maintained belonging to Plaintiff and Class Members; (b) violation of their privacy rights; (c) the compromise, publication, and/or theft of their Private Information; (d) lost money paid to Defendant and  the lost benefit of the bargain in Defendant's failure to comply with its obligations and representations, (e) the out-of-pocket costs for detecting, preventing, mitigating the effects of the Data

CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955

Breach; and (f) the present, imminent, and impending injury arising from the increased risk of identity theft and fraud.

119.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer injury, including but not limited to (a) damage to and diminution in the value of their Private Information, a form of property that Defendant maintained belonging to Plaintiff and Class Members; (b) violation of their privacy rights; (c) the compromise, publication, and/or theft of their Private Information; (d) lost money paid to Defendant and the lost benefit of the bargain in Defendant's failure to comply with its obligations and representations, (e) the out-of-pocket costs for detecting, preventing, mitigating the effects of the Data Breach; and (f) the present, imminent, and impending injury arising from the increased risk of identity theft and fraud.

120.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

121.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendant's services.

<u>**COUNT FOUR**</u>

**(Violation of the California Unfair Competition Law,**

**Cal. Bus. & Prof. Code § 17200, *et seq*.)**

**(On Behalf of Plaintiff and the Nationwide Class)**

122.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth herein.

123.    The California Unfair Competition Law, Cal. Bus. & Prof. Code sections 17200 et seq. ("UCL") prohibits any "fraudulent," or "unfair" or "unlawful" business

CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955

act or practice and any false or misleading advertising, as defined by the UCL and relevant case law.

124. By reason of Defendant's wrongful actions, inaction, and omissions, the resulting Data Breach, as described above, and the unauthorized disclosure of Plaintiff and Class Members' Private Information, Defendant engaged in unfair practices within the meaning of the UCL.

125. Defendant has violated the UCL by engaging in unfair business acts and practices and unfair, deceptive, untrue, or misleading advertising that constitute acts of "unfair competition" as defined in the UCL with respect to the services provided to the Class.

126. Defendant's business practices as alleged herein are unfair because they offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers, in that the Private Information of Plaintiff and Class Members has been compromised.

127. Defendant's wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff and Class Members' Private Information also constitute "unfair" business acts and practices within the meaning the UCL in that Defendant's conduct was substantially injurious to Plaintiff and Class Members, offensive to public policy, immoral, unethical, oppressive and unscrupulous, and the gravity of Defendant's conduct outweighs any alleged benefits attributable to such conduct.

128. Defendant's business practices as alleged herein are wrongful and unfair because, through the specific statements described above, Defendant is likely to mislead consumers into believing that the Private Information they provided to Defendant will remain private and secure, when in fact it has not been maintained in a private and secure manner, that Defendant would employ computer systems and practices to prevent the access to and downloading of users' Private Information, when in fact it did

CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955

not, and that Defendant would take proper measures to investigate and remediate a data breach as such, when Defendant did not do so.

129.    Defendant's business practices as alleged herein are unlawful because, *inter alia*, by establishing substandard security practices and procedures and failing to take reasonable measures to protect Plaintiff's and Class Member's PHI and/or PII, Defendant violated federal statutory and common laws alleged herein, including the Federal Trade Commission Act, 15 U.S.C. § 45, along with the HIPAA, 42 U.S.C. §§ 1302d, *et seq*., and Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809.

130.    Defendant's business practices as alleged herein are also unlawful and in violation of state statutory and common laws alleged herein, including Cal. Civ. Code § 56 *et seq*. and Civil Code § 1798 *et seq*., because it failed to take reasonable measures to protect Plaintiff and Class Members' PHI and/PII, and because it failed to disclose the Data Breach in a timely and accurate manner, contrary to the duties imposed by Cal. Civ. Code § 1798.82 and Cal. Health & Safety Code § 1280.15(b).

131.    Plaintiff and Class Members reserve the right to allege other violations of law by Defendant constituting other unlawful business acts or practices. Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care are ongoing and continue to this date.

132.    Plaintiff and Class Members have suffered and continue to suffer  injury in fact and lost money or property as a direct and legal result of Defendant's unfair competition and violation of the UCL, including but not limited to the price received by Defendant for the services, the loss of Plaintiff's and Class Members' legally protected interest in the confidentiality and privacy of their Private Information, nominal damages, and additional losses as described above.

133.    Plaintiff, on behalf of the Class, seeks relief under the UCL, including, but not limited to, restitution to Plaintiff and Class Members of money or property that Defendant may have acquired by means of Defendant's unfair and fraudulent business practices, restitutionary disgorgement of all profits accruing to Defendant because of

CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955

Defendant's unfair business practices, declaratory relief, attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. §1021.5), and injunctive or other equitable relief.

## COUNT FIVE

### (Violation of the California Customer Records Act,
### Cal. Civ. Code §§ 1798.80 *et seq.*)
### (On Behalf of Plaintiff and the California Subclass)

134.   Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

135.   Cal. Civ. Code § 1798.81.5 provides that "[i]t is the intent of the Legislature to ensure that personal information about California residents is protected. To that end, the purpose of this section is to encourage businesses that own, license, or maintain personal information about Californians to provide reasonable security for that information."

136.   Section 1798.81.5(b) further states that: "[a] business that owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

137.   Cal. Civ. Code § 1798.84(b) provides that [a]ny customer injured by a violation of this title may institute a civil action to recover damages." Section 1798.84(e) further provides that "[a]ny business that violates, proposes to violate, or has violated this title may be enjoined."

138.   Plaintiff and members of the Class are "customers" within the meaning of Civ. Code § 1798.80(c) and 1798.84(b) because they are individuals who provided personal information to Defendant.

139.   The personal information of Plaintiff and the Class Members at issue in this lawsuit constitutes "personal information" under § 1798.81.5(d)(1) in that the personal information Defendant collects and which was impacted by the cybersecurity

CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955

attack includes an individual's first name or first initial and the individual's last name in combination with one or more of the following data elements, with either the name or the data elements not encrypted or redacted: (i) Social security number; (ii) Driver's license number, California identification card number, tax identification number, passport number, military identification number, or other unique identification number issued on a government document commonly used to verify the identity of a specific individual; (iii) account number or credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account; (iv) medical information; (v) health insurance information; (vi) unique biometric data generated from measurements or technical analysis of human body characteristics, such as a fingerprint, retina, or iris image, used to authenticate a specific individual; (vii) genetic data.

140.    Defendant knew or should have known that its computer systems and data security  practices were inadequate to safeguard the Class's personal information and that the risk of a data breach or theft was highly likely. Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information of Plaintiff and the Class. Specifically, Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information of Plaintiff and the Class from unauthorized access, destruction, use, modification, or disclosure. Defendant further subjected Plaintiff's and the Class's nonencrypted and nonredacted personal information to unauthorized access and exfiltration, theft, or disclosure as a result of the Defendant's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, as described herein.

141.    As a direct and proximate result of Defendant's violation of its duty, the unauthorized access, destruction, use, modification, or disclosure of the personal

CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955

information of Plaintiff and the Class included hackers' access to, removal, deletion, destruction, use, modification, disabling, disclosure and/or conversion of the personal information of Plaintiff and the Class by the ransomware attackers and/or additional unauthorized third parties to whom those cybercriminals sold and/or otherwise transmitted the information.

142.    As a direct and proximate result of Defendant's acts or omissions, Plaintiff and Class Members were injured and lost money or property, including but not limited to the loss of Plaintiff's and the Class's legally protected interest in the confidentiality and privacy of their personal information, nominal damages, and additional losses described above. Plaintiff seeks compensatory damages as well as injunctive relief pursuant to Cal. Civ. Code § 1798.84(b).

143.    Moreover, the California Customer Records Act further provides: "A person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of the breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person."    Cal. Civ. Code § 1798.82.

144.    Any person or business that is required to issue a security breach notification under the CRA must meet the following requirements under §1798.82(d):

    a. The name and contact information of the reporting person or business subject to this section;

    b. A list of the types of personal information that were or are reasonably believed to have been the subject of a breach;

    c. If the information is possible to determine at the time the notice is provided, then any of the following:

        i. the date of the breach,

        ii. the estimated date of the breach, or

CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955

iii. the date range within which the breach occurred. The notification shall   also include the date of the notice;

d.  Whether notification was delayed as a result of a law enforcement investigation, if that information is possible to determine at the time the notice is provided;

e.  A general description of the breach incident, if that information is possible to   determine at the time the notice is provided;

f.  The toll-free telephone numbers and addresses of the major credit reporting agencies if the breach exposed a social security number or a driver's license or California identification card number;

g.  If the person or business providing the notification was the source of the breach, an offer to provide appropriate identity theft prevention and mitigation services, any, shall be provided at no cost to the affected person for not less than months along with all information necessary to take advantage of the offer to any person whose information was or may have been breached if the breach exposed or may have exposed personal information.

145.   Plaintiff and Class Members were entitled to receive timely notice from Defendant.

146.   On information and belief, many Class Members affected by the breach, have not received any notice at all from Defendant in violation of Section 1798.82(d).

147.   As a result of the violations of Cal. Civ. Code § 1798.82, Plaintiff and Class Members suffered incrementally increased damages separate and distinct from those simply caused by the breaches themselves.

148.   As a direct consequence of the actions as identified above, Plaintiff and Class Members incurred additional losses and suffered further harm to their privacy, including but not limited to economic loss, the loss of control over the use of their

CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955

identity, increased stress, fear, and anxiety, harm to their constitutional right to privacy, lost time dedicated to the investigation of the breach and effort to cure any resulting harm, the need for future expenses and time dedicated to the recovery and protection of further loss, and privacy injuries associated with having their sensitive personal, financial, and payroll information disclosed, that they would not have otherwise incurred but for the data breach of Defendant, and are entitled to recover compensatory damages according to proof pursuant to § 1798.84(b).

**COUNT SIX**

**(Violation of the California Confidentiality of Medical Information Act,**

**Cal. Civ. Code § 56 *et seq*.)**

**(On behalf of Plaintiff and the California Subclass)**

149.  Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

150.  Section 56.10(a) of the California Civil Code provides that "[a] provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining authorization."

151.  At all relevant times, Defendant was a health care provider because it had the "purpose of maintaining medical information in order to make the information available to an individual or to a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage his or her information, or for the diagnosis or treatment of the individual." Cal. Civ. Code § 56.06(a).

152.  At all relevant times, Defendant collected, stored, managed, and transmitted Plaintiff's and Class Members' Private Information, including personal identifying information and personal health information.

CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955

153.    The CMIA requires Defendant to implement and maintain standards of confidentiality with respect to all individually identifiable personal health information disclosed to them and maintained by them. Specifically, California Civil Code § 56.10(a) prohibits Defendant from disclosing Plaintiff's and Class Members' personal health information without first obtaining their authorization to do so.

154.    Section 56.11 of the California Civil Code specifies the manner in which authorization must be obtained before personal health information is released. Defendant, however, failed to obtain any authorization – let alone, proper authorization – from Plaintiff and Class Members before releasing and disclosing Private Information that included personal health information. Defendant also failed to identify, implement, maintain and monitor the proper data security measures, policies, procedures, protocols, and software and hardware systems to safeguard and protect Plaintiffs and Class Members' personal health information as required by California law. As a direct and proximate result of Defendant's wrongful actions, inaction, omissions, and want of ordinary care, Plaintiff and Class Members' Private Information, including personal health information, was disclosed. By disclosing Plaintiff's and Class Members' Private Information, including personal health information, without their written authorization, Defendant violated California Civil Code § 56, *et seq*., and their legal duty to protect the confidentiality of such information.

155.    Defendant also violated Sections 56.06 and 56.101 of the California CMIA, which prohibits the negligent creation, maintenance, preservation, storage, abandonment, destruction or disposal of confidential PHI. As a direct and proximate result of Defendant's wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff's and Class Members' confidential Private Information, including personal health information, was viewed, released, and disclosed without their authorization by unauthorized persons.

CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955

156.   As a direct and proximate result of Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Date Breach and its violation of the CMIA, Plaintiff and Class Members are also entitled to: (i) injunctive relief, (ii) actual damages, (iii) nominal statutory damages of $1,000, (iv) punitive damages of up to $3,000 per Plaintiff and each Class Member, and (v) attorneys' fees, litigation expenses and court costs under California Civil Code § 56.35.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and each member of the proposed Class, respectfully request that the Court enter judgment in their favor and for the following specific relief against Defendant as follows:

1. An order certifying the Class, along with the California Subclass, and declaring that Plaintiff is the Class Representative and appointing Plaintiff's counsel as Class Counsel;

2. Permanent injunctive relief to prohibit Defendant from continuing to engage in the unlawful acts, omissions, and practices described herein;

3. Compensatory, consequential, general, statutory, and nominal damages in an amount to be proven at trial;

4. Disgorgement and restitution of all earnings, profits, compensation, and benefits received as a result of the unlawful acts, omissions, and practices described herein;

5. Punitive, exemplary, and/or trebled damages to the extent permitted by law;

6. A declaration of right and liabilities of the Parties;

7. Reasonable attorneys' fees, costs, and expenses;

8. Pre- and post-judgment interest at the maximum legal rate;

CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955

9. Distribution of any monies recovered on behalf of members of the Class or the general public via fluid recovery or *cy pres* recovery where necessary and as applicable to prevent Defendant from retaining the benefits of their wrongful conduct; and

10. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial in the instant action.

Dated: December 19, 2024

**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD LLP**

*/s/ Jennifer L. Connor*

David S. Casey, Jr.
Gayle M. Blatt
P. Camille Guerra
Jennifer L. Connor

**SWIGART LAW GROUP, APC**
Joshua B. Swigart
2221 Camino Del Rio S., Suite 308
San Diego, CA 92108
Tel: (866) 219-3343
Fax: (866) 219-8344
josh@swigartlawgroup.com

*Attorneys for Plaintiff*

- 38 -

CLASS ACTION COMPLAINT
Case No. 2:24-cv-10955